# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| **GEORGE JOSEPH RAUDENBUSH, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:11-cv-00625** |
| | ) | **REEVES/POPLIN** |
| **MONROE COUNTY, TENNESSEE,** | ) | |
| **BILL BIVENS, SHERIFF OF MONROE COUNTY,** | ) | |
| **TOWN OF TELLICO PLAINS, TENNESSEE,** | ) | |
| **OFFICER BRIAN MILLSAPS, and** | ) | |
| **OFFICER TRAVIS JONES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

George Raudenbush brings this civil rights action under 42 U.S.C. § 1983 alleging excessive force and denial of medical care following a traffic stop, subsequent arrest, and detention in the Monroe County Jail. All defendants move for summary judgment. For the reasons that follow, defendants' motions for summary judgment will be granted and this action dismissed.

## I. Background

The factual background for the traffic stop and subsequent arrest is taken from the Tennessee Court of Criminal Appeal's opinion[1]. *See State of Tennessee v. Raudenbush,* 2017 WL 2443079.

> On December 30, 2010, Sgt. Brian Millsaps of the Tellico Plains Police Department was patrolling and "running" radar on Highway 68. Auxiliary Officer April Shaffer was riding with him. Sgt. Millsaps testified that the speed limit on Highway 68 was 45 miles per hour. At some point, as they were driving toward Coker Creek, Sgt. Millsaps and Officer Shaffer met Raudenbush's vehicle which Sgt. Millsaps estimated to be travelling over the speed limit. Sgt. Millsaps' radar unit verified that the vehicle was travelling 57 miles per hour, which was 12 miles over the posted speed limit. Sgt. Millsaps turned around, activated his blue lights, and got behind Raudenbush's vehicle to initiate a traffic stop. Raudenbush pulled over and Sgt. Millsaps noticed that Raudenbush's license plate read "Luke 4/18." He could not tell from which state the plate was registered. Sgt. Millsaps noted that the stickers on the license plate were not real. He said that there were also stickers on the plate that read "Basieia Ouranos." The plate showed that it was issued by the "Emgassyofheaven.org." Sgt. Millsaps ran a check on the license plate, and it came back as "not on file."

> Sgt. Millsaps walked up to the driver's side of the vehicle and Officer Shaffer walked up to the passenger side. Detective Travis Jones also arrived on the scene as back-up and was sitting in his truck. Sgt. Millsaps explained to Raudenbush why he had pulled him over and asked for his driver's license, insurance, and registration. Sgt. Millsaps described the driver's license as follows:

> At the top, it's got "driver's license." In the upper right-hand corner it has "Kingdom of Heaven." It has a photograph of Raudenbush. It has an ID number, his sex, Baptism, issue date, and expiration date. It has his height, weight, eye color, hair color, his name, George Joseph Raudenbush, III, Embassy of Heaven Church. And then State of Oregon. H is signature at the bottom.

---

[1] This was Raudenbush's second trial. The Tennessee Criminal Court of Appeals reversed and remanded the case for a new trial because the trial court denied defendant his Sixth Amendment right to counsel by requiring him to proceed *pro se* at trial. *See State v. Raudenbush,* 2013 WL 62372011.

Sgt. Millsaps testified that the driver's license was not valid, and Raudenbush told Sgt. Millsaps that he was not a resident of the State of Tennessee. Raudenbush never presented Sgt. Millsaps with a valid driver's license. Sgt. Millsaps checked the status of Raudenbush's driver's license and learned that it was suspended. He then obtained a certified copy of Raudenbush's driving history.

Sgt. Millsaps testified that Raudenbush also gave him a document that read "vehicle title and registration record." It indicated that it was issued by the "Embassy of Heaven," and it had an address from the State of Oregon on it. Sgt. Millsaps testified that the registration was not valid in the State of Tennessee. Raudenbush also provided a "vehicle certificate of title." The document had a notary seal from "Embassy of Heaven." The document read "Embassy of Heaven of the Kingdom of Heaven certifies that the vehicle described below has been registered to this office and that the individual stated below is the lawful steward." There was also a registration card with the same information.

Sgt. Millsaps testified that he informed Raudenbush that he would be under arrest if he could not produce a valid driver's license. When he asked if Raudenbush had any form of a government-issued driver's license, Raudenbush replied "I am not a citizen of this state." Sgt. Millsaps asked Raudenbush to step out of the car. Raudenbush refused by rolling up the window and locking the door. Sgt. Millsaps then yelled several times that Raudenbush was under arrest. Raudenbush then put his car in drive and turned the wheel. Sgt. Millsaps used his flashlight to knock the driver's side window out of the car. He testified that he did not hit Raudenbush with the flashlight. Sgt. Millsaps attempted to open the vehicle door but Raudenbush "accelerated onto Highway 68." Sgt. Millsaps then took "evasive action" to avoid being struck by Raudenbush's car. Officer Shaffer testified that the vehicle nearly hit her and Sgt. Millsaps. Det. Jones pulled out behind Raudenbush, and Sgt. Millsaps and Officer Shaffer went back to their patrol vehicle to pursue Raudenbush.

Both Sgt. Millsaps and Officer Shaffer testified they observed an oncoming vehicle go off the road and into the grass to avoid hitting Raudenbush's car. Sgt. Millsaps stated it was not a high-speed chase and it reached a speed of 40-50 miles per hour. At one point, the officers tried to "box him in" but Raudenbush struck Det. Jones' truck before they could get "set up." Sgt. Millsaps testified that Raudenbush lost control of his vehicle at one point and "slid all the way, sideways, in the road." Raudenbush was able to keep going and eventually turned onto Pond Ridge Road and into a driveway. Raudenbush stopped the car, got out, and ran.

Sgt. Millsaps got out of his car and chased Raudenbush on foot. He yelled at Raudenbush to stop, but Raudenbush kept running. Sgt. Millsaps eventually lost sight of Raudenbush. He later received information from dispatch and went to a residence. Raudenbush was taken out of the residence, arrested, and transported to jail.

Det. Travis Jones of the Monroe County Sheriff's Office testified that he drove an unmarked. Black F-150 truck. His vehicle was equipped with blue lights and sirens. On the night of December 30, 2010, he was on his way home when he learned that Sgt. Millsaps had stopped a vehicle. He drove to the scene in order to "back him up on the traffic stop" and activated his blue lights.

Det. Jones was about to step out of his truck when he heard a loud "pop," and he saw Sgt. Millsaps "jump back." Det. Jones then realized the sound was the driver's side window breaking. Raudenbush drove away and Det. Jones pulled out behind him and activated his siren. Det. Jones testified that he attempted to drive around Raudenbush to effect a "rolling road block," but he was unable to get in front of Raudenbush because Raudenbush drove into Det. Jones' lane and struck his truck as he was passing him. Det. Jones testified that he later attempted to drive around Raudenbush a second time. He stated that Raudenbush struck his vehicle a total of three times during the pursuit. Det. Jones testified "There around the curve, come a van around the curve, Raudenbush actually went in their lane and forced them off into the emergency lane closer to grass." Det. Jones testified that when Raudenbush turned onto Pond Ridge Road, Det. Jones missed the turn, and Sgt. Millsaps got behind Raudenbush and continued the chase. Det. Jones turned around and drove to the residence where Raudenbush had parked his car and fled on foot.

Joan Champion, testified that she lives on Pond Ridge Road in Coker Creek. She has known Raudenbush for 6 or 7 years. On December 30, 2010, she was asleep when Raudenbush came to her house and asked to use the phone. She said that he seemed to be afraid and in a panic. Champion thought that she saw blood "somewhere." She thought it may have been on Raudenbush's hand.

Raudenbush testified that he did not believe he was speeding prior to being pulled over by Sgt. Millsaps. He recognized Sgt. Millsaps because Sgt. Millsaps was present when he had been pulled over "twice before." Raudenbush further testified that he presented his driver's license to Sgt. Millsaps. The license was issued by "KOH," which stands for "Kingdom of

Heaven." Raudenbush stated that KOH is an organization based out of Oregon. Concerning KOH, Raudenbush testified "I did some research. I called them. They referred me to the state department. I verified their credentials, and that's how I met them." He believed his driver's license was valid. He had been pulled over in Ranger, North Carolina, but the officer never told him the license was invalid. He said that he had also been pulled over in Decatur, Tennessee and had no reason to believe his license was invalid.

Raudenbush testified that after he handed Sgt. Millsaps the license, Sgt. Millsaps asked for the registration card, so I handed him the registration. At that point, he asked me for the insurance. When I went to go for the insurance papers, he told me to exit the vehicle. Because it was cold that night, I rolled up my window, and when I went to open the door, I heard a thump, and I couldn't open the door. When I looked up, I heard another – it wasn't a thump, but it was kind of like a bang, like a noise on the window, and then that – the first time, I didn't realize it then, but his flashlight had hit the window and bounced off. The second time, it broke the window and hit me in the head. After the second time, when the flashlight came through, I put my hand up to protect my face. When I did that, I sustained a laceration to my hand, to my finger, and there was blood everywhere. At that point, I started panicking. I didn't know what was going on. And then when I looked over to the officer, he was drawing his gun. Raudenbush did not recall Sgt. Millsaps saying anything at that point. He believed Sgt. Millsaps was going to shoot him.

Raudenbush testified that he was scared and, without thinking, put the car into drive and "went forward" for about 50 – 100 feet before he realized he had to turn back on the road." His only concern was to "get out of that situation." He denied striking any of the officers' vehicles and he did not recall seeing any other vehicles on the road that evening. He went to the house where he was staying, but it didn't have a phone, so he went to his neighbor's house. He told Champion that he needed to call the "state patrol." He told the 911 operator that there was an attempt on his life by a police officer and he needed state patrol. He did not want anybody from Tellico to come out or from the Monroe County Sheriff's Office. Raudenbush testified that his injuries consisted of glass cuts behind his ear, and he has a scar on his head "from where the flashlight hit." He said his hand was also cut from the glass, and his blood pressure was "really high."

On cross-examination, Raudenbush admitted that he obtained his KOH license after his government-issued license was suspended for failure to pay citations. He further admitted that he got the KOH license because "an employee of the state refused to register their church vehicles."

Raudenbush was ultimately taken into custody by a Monroe County deputy without incident and transported to the Monroe County Jail. Sgt. Millsaps had no further dealings relating to Raudenbush once he was taken into custody by the Monroe County deputy on the scene and transported to the Monroe County Jail.

Raudenbush was transported to Sweetwater Hospital Emergency room and was triaged at 1:22 a.m. on December 31, 2010. He was accompanied by Officer Larry Bivens and was treated for a laceration on his left index finger. Raudenbush was taken to radiology where an x-ray was taken of his left hand to check for a fracture. Upon discharge, he was prescribed 500 mg of Keflex. Raudenbush refused to sign his discharge summary, so Officer Bivens signed the form. Upon his return, Raudenbush was formally booked into the jail.

As part of the booking process, Raudenbush was screened by the medical staff and it was noted that he did have a laceration on his finger. Raudenbush refused to sign the form and also refused to consent to treatment while incarcerated and would not authorize the Sheriff's Office to release his medical information to other treating facilities. When Raudenbush was called to medical for his intake questionnaire, the medical staff attempted to follow up on his emergency room visit and give him his medication as prescribed. He allowed the medical staff to clean his laceration and put on a new band-aid. But, he refused to take the medication that was prescribed to him by the Emergency Room, stating that he

was "not taking any meds" because he didn't know if he could have "a reaction." Raudenbush also refused to sign the Refusal of Medical Treatment and Release of Responsibility form.

The next day, Raudenbush signed the Inmate Medical Form, but he still refused to sign the Medical Staff Screening form when jail staff attempted to go through it again. While Raudenbush was incarcerated, records indicate that when he made a sick call, he was promptly seen for his ailments and offered some sort of treatment.

A jury convicted Raudenbush of speeding, reckless endangerment, simple assault, evading arrest, evading arrest with risk of death, violation of Financial Responsibility, and driving on a suspended license. He was sentenced to 4 years imprisonment to be served on supervised probation.[2] The Tennessee Criminal Court of Appeals affirmed the jury verdict on September 20, 2016. An application for permission to appeal to the Tennessee Supreme Court was denied on October 3, 2017.

## II.  Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light

---

[2] After his first conviction, Raudenbush was sentenced to four years imprisonment in the Tennessee Department of Corrections. He remained in TDOC custody until his second trial.

most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III.  Excessive Force**

Raudenbush claims that Sgt. Millsaps used excessive force during the traffic stop.

There is a constitutional right to be free from excessive force during an arrest. *Graham v. Connor,* 490 U.S. 386 (1989). Claims for excessive force in the course of an

arrest, stop, or seizure are properly analyzed under the Fourth Amendment's "objective reasonableness standard." *Id.* at 388. In assessing an excessive force claim, courts must construe all facts in the record in the light most favorable to the plaintiff. *Schreiber v. Moe,* 596 F.3d 323, 332 (6th Cir. 2010). After doing so, the question of whether an officer's action was objectively unreasonable "is a pure question of law." *Id.* In order to determine whether the force used during an arrest or seizure was objectively reasonable, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The court must evaluate the facts and circumstances including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness must be judged from the point of view of the officer on the scene at the time the force was used. *Id.*

The reasonableness of an officer's use of force is judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight. *Id.* A calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgment in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation. *Id.* The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio,* 392 U.S. 1, 22-27 (1968).

## A. Sgt. Millsaps

Raudenbush alleges that Sgt. Millsaps used excessive force against him by breaking out the window of his car. He further alleges that Sgt. Millsaps "repeatedly struck the plaintiff in his face and head, as plaintiff sat in the vehicle."

The record in this case establishes that Sgt. Millsaps stopped Raudenbush for speeding. While speeding is not a severe crime and was the reason Sgt. Millsaps sought to stop Raudenbush, resisting, fleeing and eluding are felonies under Tennessee law. After Sgt. Millsaps ordered Raudenbush to step out of the car, Raudenbush rolled up the window and locked the doors. Raudenbush does not contest that he failed to comply with Sgt. Millsaps' orders to exit the car. Instead of complying with Sgt. Millsaps' lawful commands, Raudenbush accelerated, almost hitting Sgt. Millsaps and Officer Shaffer. Sgt. Millsaps reasonably believed that Raudenbush intended to flee the scene, thereby endangering the officers and other motorists. Sgt. Millsaps then used his flashlight to break the window. Taking all of these facts into account, Sgt. Millsaps' actions cannot be found to be objectively unreasonable under the circumstances. Raudenbush ignored Sgt. Millsaps lawful commands to exit the vehicle; he was actively resisting arrest; and attempting to evade arrest by flight. There is no evidence on which a jury could reasonably find that the force used was excessive.

While Raudenbush asserts that Sgt. Millsaps repeatedly struck him in the face and head, there is no evidence to support that claim. There are no notations of a head injury on the jail intake forms, nor on the emergency room records from Sweetwater Hospital. Moreover, Joan Champion only recalled seeing blood somewhere, maybe on Raudenbush's

hand.  She certainly would have noticed if Raudenbush had been beaten about the face and head as he alleges.

Moreover, Raudenbush's criminal convictions arising out of the stop affirmatively bar his excessive force claim.  *See Heck v. Humphrey,* 512 U.S. 477, 487 (1994) (If § 1983 action would challenge the validity of state criminal conviction, the action is barred unless the state court conviction has been overturned or expunged).  The Sixth Circuit has ruled that under Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; therefore, a guilty plea or conviction for resisting/evading arrest necessarily includes a finding that the officer did not use excessive force.  *Roberts v. Anderson,* 213 Fed. Appx. 420, 427 (6th Cir. 2007) (referring to Tenn. Code Ann. § 39-16-602).  Here, Raudenbush was convicted of evading arrest, reckless endangerment, and assault.  The criminal convictions have not been invalidated and are binding on him.  Therefore, the court finds that under *Heck*, Raudenbush is barred from maintaining an excessive force claim against Sgt. Millsaps.  Because the court concludes that there was no constitutional violation, it need not reach the issue of whether Sgt. Millsaps would be entitled to qualified immunity.

**B.  Det. Jones**

Raudenbush claims that Det. Jones is liable under the Fourth Amendment for failing to prevent or stop the use of force by Sgt. Millsaps against him.  An officer can be liable for failing to prevent the use of excessive force when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the

opportunity and the means to prevent the harm from occurring.  *Turner v. Scott,* 119 F.3d

425, 429 (6th Cir. 1997).

First, the court has found that Sgt. Millsaps did not use excessive force against

Raudenbush.  Second, assuming that Raudenbush could establish a claim of excessive

force, Raudenbush has failed to present evidence that Det. Jones would have been able to

both anticipate Sgt. Millsaps breaking the vehicle window and then implement preventative

measures.  Det. Jones testified that he was about to step out of his truck when he heard a

loud "pop" and saw Sgt. Millsaps "jump back."  Raudenbush then drove away.

Raudenbush offers nothing to contradict Det. Jones' testimony.  Accordingly, Raudenbush

cannot maintain a claim against Det. Jones for failing to prevent the use of excessive force.

### C.  Officer Bivens

Raudenbush has alleged no facts to show that Officer Bivens was at the scene of his

arrest; nor does he plead any facts to establish that Officer Bivens failed to intervene on his

behalf during the initial traffic stop.

### D.  Town of Tellico Plains

Raudenbush's Amended Complaint also includes a claim of municipal liability

under § 1983 pursuant to *Monel v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).  To succeed

on a municipal liability claim, a plaintiff must establish that his constitutional rights were

violated and that a policy or custom of the municipality was the "moving force" behind the

deprivation of the plaintiff's rights.  *Miller v. Sanilac Cnty,* 606 F.3d 240, 254-55 (6th Cir.

2010).  Here, Raudenbush claims that the deprivation of constitutional rights stem from the

City of Tellico Plains' policies regarding training and the use of force.  In order to succeed

on a failure to train claim, a plaintiff must show that the failure to train amounts to deliberate indifference "to the rights of the person with whom the police come into contact." *Id.* at 255. Because Raudenbush failed to establish a constitutional violation for excessive force, the Town of Tellico Plains cannot be held liable under § 1983. *See Smith v. Thornburg,* 136 F.3d 1070, 1087, n. 12 (6th Cir. 1998) (declining to address issue of municipal liability because no constitutional violation occurred).

### E. Monroe County

Raudenbush also alleges a municipal liability claim against Monroe County for excessive force used during the initial traffic stop by Sgt. Millsaps. The Amended Complaint contains no factual allegations to establish an excessive force claim against any Monroe County officer. Sgt. Millsaps was employed by the Tellico Plains Police Department. Because Raudenbush fails to plead facts to support an excessive force claim against any officer of Monroe County, the County cannot be held liable under § 1983.

## IV. Unlawful Arrest

Raudenbush next claims that Sgt. Millsaps is liable to him for an alleged unlawful arrest. Raudenbush was arrested and found guilty of speeding, reckless endangerment, simple assault, evading arrest, evading arrest with risk of death, violation of Financial Responsibility, and driving on a suspended license. Therefore, as a matter of law, Raudenbush is foreclosed from raising the issue of the lawfulness of his arrest here.

A state court judgment must be given the same preclusive effect in federal court that it would be given in the courts of the rendering state. This principle applies to civil rights actions under § 1983 with respect to issues actually litigated (collateral estoppel or issue

preclusion) and issues which could have been but were not litigated in the state court proceeding (res judicata or claim preclusion). *Walker v. Schaeffer,* 854 F.2d 138, 142 (6th Cir. 1988). However, this preclusive effect will not be given to a state court judgment if the party against whom the judgment is asserted did not have a "full and fair opportunity to litigate the claim or issue." *Fellowship of Christ Church v. Thorburn,* 758 F.2d 1140, 1144 (6th Cir. 1985).

The court looks to Tennessee law on the doctrine of collateral estoppel to determine the preclusive effect of the state court judgment. *Stemler v. City of Florence,* 126 F.3d 856, 871 (6th Cir. 1997). Pursuant to Tennessee law, once an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different. *State v. Scarbrough,* 181 S.W.3d 650, 654 (Tenn. 2005). The party seeking to bar an issue by collateral estoppel has the burden of proof. *Id.* at 655.

Whether probable cause existed for Raudenbush's arrest was at issue in the state court criminal proceedings for which there are judgments of conviction. Raudenbush was represented by counsel at the state court proceedings. There is nothing in the record to indicate that Raudenbush and his counsel did not have a full and fair opportunity to challenge the probable cause determination made by the jury to the charges for which Raudenbush was convicted. Therefore, the judgments of conviction collaterally estop him from asserting that he was arrested without probable cause. *Cox v. Reagan,* 2009 WL 874013 at 3 (E.D.Tenn. Mar. 30, 2009).

Defensive collateral estoppel is proper under Tennessee law where the plaintiff is convicted of the criminal charge but then demands damages in civil litigation concerning precisely the same incident by asserting that he did not commit the criminal act. *Cunningham v. Sisk,* 2003 WL 23471541 at *8 (E.D.Tenn. Dec. 4, 2003). Application of the doctrine of collateral estoppel prevents the plaintiff from repudiating his conviction and attacking the validity of his state-court judgment of conviction. *Id.*

A further reason to grant summary judgment on Raudenbush's unlawful arrest claim is that his conviction on the state law charges provides the defendants with "a complete defense to this cause of action brought under § 1983." "Where police officers have made an arrest, the resulting conviction is a defense to a § 1983 action claiming the arrest was made without probable cause." *Id.*

**V.  Official/Individual Capacity**

In his Amended Complaint, Raudenbush fails to identify in what capacity he has sued the individual officers, Sgt. Millsaps, Officer Bivens, and Det. Jones. The Amended Complaint does not indicate whether these officers are being sued in their individual capacity, official capacity or both. Because the court concludes that there was no constitutional violation, it need not reach the issue of whether the officers were sued in their individual or official capacity.

**VI.  Civil Conspiracy**

Raudenbush alleges Sgt. Millsaps is liable to him for an alleged violation of 42 U.S.C. §§ 1985 and 1986.

To state a claim under § 1985, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. Of Carpenters and Joiners of Amer. v. Scott,* 463 U.S. 825, 828-29 (1983). The acts which are alleged to have deprived the plaintiff of equal protection must be the result of class-based discrimination. *See Newell v. Brown,* 981 F.2d 880, 886 (6th Cir. 1992). The critical issue is whether Raudenbush can establish that Sgt. Millsaps' actions were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88 (1971). Additionally, conspiracy claims must be pled with some degree of specificity and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch,* 826 F.2d 1534, 1538-39 (6th Cir. 1987).

Section 1986 provides a cause of action against a person who neglects to prevent a violation of § 1985. Without a violation of § 1985, there can be no violation of § 1986. *German v. Illeen,* 495 F.Supp. 822, 829 (E.D.Mich. 1980). Where a plaintiff has no § 1985 claim he also has no §1986 claim. *Haverstick Enter. Inc. v. Fin. Federal Credit, Inc.,* 803 F.Supp. 1251, 1260 (E.D.Mich. 1992).

In this case, Raudenbush has not adequately pleaded a conspiracy. Raudenbush has pleaded no facts to establish the existence of a conspiracy nor did he allege any racial or class-based discriminatory animus. In fact, the word "conspiracy" only appears once in

the Amended Complaint. The Amended Complaint states that "the Defendants violated Plaintiff's civil rights as follows . . . (d) conspired together to violate one or more of plaintiff's civil rights." Such a conclusory statement, without factual support, is not adequate to state a cause of action. *See Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir. 1984) (dismissing conspiracy claim where the complaint merely alleged broad conclusory language void of the factual allegations necessary to support a conspiracy theory). Thus, Raudenbush cannot maintain a claim under § 1985.

Because Raudenbush's § 1986 claim is dependent upon the existence of a valid § 1985 cause of action, it also fails as a matter of law.

## VII.  Fourteenth Amendment

Raudenbush alleges Sgt. Millsaps is liable to him for an alleged violation of the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment states that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Raudenbush does not specify whether he is asserting a procedural or substantive due process claim. He alleges only a claim for violation of his civil rights "as protected by the 4th and 14th Amendments to the U.S. Constitution and laws of the United States under 42 U.S.C. §§ 1983, 1985, 1986 and for other causes of action as alleged herein." To the extent that Raudenbush is attempting to assert a substantive due process claim for Sgt. Millsaps alleged use of excessive force, that argument fails as it is well settled that such claims are to be analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham,* 490 U.S. at 388. As further explained in *Graham*:

all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Id.* at 395. Graham requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *Henderson v. Reyda*, 192 Fed.Appx. 392, 396 (6th Cir. 2006). Raudenbush's excessive force claim falls squarely under the Fourth Amendment. Therefore, he cannot assert a substantive due process claim for excessive force under the Fourteenth Amendment.

## VIII. First Amendment Retaliation

Raudenbush alleges violation of his constitutional rights asserting that he was arrested or seized in retaliation for exercising his First Amendment right to complain about government officials.

Generally, there can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is among the protections provided by the First Amendment. *Barnes v. Wright,* 449 F.3d 709, 717 (6th Cir. 2006). As the Supreme Court has explained, the "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principle characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill,* 482 U.S. 451,

462-63 (1987). In order for a plaintiff to prevail in a § 1983 claim for retaliatory prosecution, he must first prove a lack of probable cause. *Hartman v. Moore,* 547 U.S. 250 (2006).

Here, Officer Bivens and Det. Jones did not participate in the initial stop of Raudenbush. They were merely providing backup to Sgt. Millsaps. Sgt. Millsaps had probable cause to arrest Raudenbush for the criminal charges in this case. And, Raudenbush was convicted of those charges after a jury trial. Therefore, Raudenbush's First Amendment retaliation claim against Sgt. Millsaps fails as a matter of law.

In his response, Raudenbush attempts to paint a picture of how the Monroe County Sheriff's Office is unlawful and often retaliates against him. However, nothing contained in the response refers to the issues in this case – the traffic stop, arrest, and incarceration – of Raudenbush on December 30, 2010, which the court has found to be lawful.

## IX. Denial of Medical Care

Raudenbush alleges that defendants denied him medical care in violation of his civil rights. He states he had serious medical needs "severe headaches coughing up blood and loss of feeling in his lower extremities, hand and arms." But the record does not support these allegations.

The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point. *Phillips v. Roane Cnty,* 534 F.3d 531, 539 (6th Cir. 2008). There are two parts to the claim, one objective, one

subjective.  For the objective component, the detainee "must demonstrate the existence of a sufficiently serious medical need." *Spears v. Ruth,* 589 F.3d 249, 254 (6th Cir. 2009).  A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Blackmore v. Kalamazoo Cnty,* 390 F.3d 890, 897 (6th Cir. 2004).

For the subjective component, the detainee "must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id.*  A defendant has a sufficiently culpable state of mind if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*  A plaintiff need not show that the defendant acted with the very purpose of causing harm, but must show "something greater than negligence or malpractice." *Id.*  The standard, then, has generally been equated with one of "recklessness." *Farmer,* 511 U.S. at 836.  The subjective component of a deliberate indifference claim must be addressed for each officer individually. *Phillips,* 534 F.3d at 542.  The evidence must show that the specific individual was aware of facts from which he or she could infer a substantial risk of serious harm.

### A.  Det. Jones

Raudenbush states in his Amended Complaint that he believes that Det. Jones is the officer who transported him to Sweetwater Hospital.  In fact, the medical records show that

it was Officer Bivens who accompanied Raudenbush to the hospital. Raudenbush was diagnosed with a cut to his left index finger and was prescribed Keflex. There are no facts in the record to establish that Det. Jones denied Raudenbush medical treatment. Accordingly, Raudenbush cannot maintain this claim against Det. Jones.

### B. Officer Bivens

There are no facts in the record to establish that Officer Bivens denied Raudenbush medical care. As stated above, Officer Bivens accompanied Raudenbush to Sweetwater Emergency Room where Raudenbush received medical care for a laceration to his finger, including an x-ray to his hand. The record also shows that Raudenbush received treatment for a sore throat around January 30, 2011 while at the Monroe County Jail. The medicine log confirms that Raudenbush was prescribed a Zpak at that time. Raudenbush also alleges that he requested to see a doctor for migraine headaches, but his medical file does not contain a complaint regarding a headache. There is nothing in the record to establish a claim of denial of medical care to Raudenbush by Officer Bivens.

### C. Monroe County

The medical records from the jail show that Raudenbush was treated by medical staff when a sick call was placed, despite refusing to consent to treatment. No member of the jail staff denied him medical care. If no constitutional violation by the any defendant is established, the municipal defendant cannot be held liable under § 1983. Having found no constitutional violation by any individual defendant with regard to deliberate indifference to serious medical needs, the court finds that Monroe County cannot be liable, as a matter of law, for this claim.

## X.  Jail Conditions

Raudenbush alleges he was "denied a shower, running water to wash with, soap/toothpaste or toothbrush, a working toilet, food, a bed and proper hygiene for medical care" during his first 72 hours at the jail.  Raudenbush further alleges that while incarcerated in Monroe County, he was subjected to extreme overcrowding and was "denied the use of the telephone in the cell he was placed in."  Raudenbush also alleges that he "was forced to sleep on a cold, bare, cement floor for 28 days developing back pain and causing his left leg to go numb."  Raudenbush further alleges that the temperature in his cell was intentionally lowered to 45-50 degrees.

The Fourteenth Amendment's due process clause protects pretrial detainees from cruel and unusual punishments, and the Eighth Amendment's cruel and unusual punishments clause protects those convicted of crimes.  *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).  An act or practice that violates the Eighth Amendment also violates the due process rights of pretrial detainees.  *Martin v. Tyson,* 845 F.2d 1451, 1457 (7th Cir. 1988).

In order to state a claim that prison conditions violate the Eighth Amendment, the plaintiff must plead facts showing that he has been subjected to deprivations so serious that he was deprived of the "minimal civilized measure of life's necessities" and that jail officials acted wantonly, with deliberate indifference to his serious needs.  *Richmond v. Settles,* 450 Fed.Appx. 448, 454-55 (6th Cir. 2011).  The plaintiff must allege "extreme deprivations" to state an Eighth Amendment conditions of confinement claim.  Allegations of temporary inconveniences are insufficient to state a claim.  *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001); *see also Agramonte v. Shartle,* 491 Fed.Appx. 557, 559

(6th Cir. 2012) (inmates cannot expect the amenities, conveniences and services of a good hotel).

Raudenbush's complaint shows that most of the deprivations he alleges he experienced were no more than temporary inconveniences. He first alleges that he was "denied a shower, running water to wash with, soap/toothpaste or toothbrush, a working toilet, food, a bed and proper hygiene for medical care" during his first 72 hours in the jail.

In a case with similar allegations, the Sixth Circuit found there was no violation of constitutional rights when an inmate was denied "toilet paper, soap, toothpaste, toothbrush, running water or the ability to shower for six days." *Richmond,* 450 Fed.Appx. at 455. In rejecting plaintiff's claim, the Sixth Circuit concluded that the deprivation of a shower and other personal hygiene items for a "brief span of time . . . *i.e.,* only six days" is not actionable conduct. *Id.* As to Raudenbush's claim that he was denied a bed, the record shows that he was given a mattress, blanket, and pillow on January 1, 2011, after he completed intake. On January 7, when Raudenbush complained about the thinness of his mattress, officers were instructed to find him a thicker mat. Accordingly, the court finds this claim without merit.

Raudenbush next alleges that he was "forced to sleep on a cold, bare, cement floor for 28 days, developing back pain and problems and causing his left leg to go numb." Again, the record shows that Raudenbush signed for and received a mattress, sheet, pillowcase, pillow and blanket on January 1. When he requested medical attention on January 7 to complain that his mat was thinner than others, the nurse instructed the officers to trade Raudenbush's mat for a thicker one. There is nothing in the record to substantiate

Raudenbush's allegation that he was forced to sleep on the floor for 28 days. Accordingly, the court finds this claim without merit.

Raudenbush also alleges that he was subjected to "extreme overcrowding" while incarcerated in Monroe County. Specifically, Raudenbush claims that he was placed in a cell with "44 other men." But there is no evidence to support his claim. Raudenbush does cite to a report that shows that the jail was overcrowded, but jail records for 2011 covering the time he was in detention, show an overcrowding of only 21 individuals. That evidence does not support Raudenbush's claim. While crowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Although Raudenbush may have been subjected to uncomfortable living conditions, he does allege with any specificity that he was subjected to conditions that could reasonably be described as an unnecessary and wanton infliction of pain.

Without question, prison officials must ensure that inmates received adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer,* 511 U.S. at 832. Harsh and uncomfortable prison conditions do not automatically create an Eighth Amendment violation. Rather "extreme deprivations" must be alleged in order to support a prison-overcrowding claim. *Agramonte,* 491 Fed.Appx. at 560.

Here, Raudenbush has failed to allege that the conditions of his confinement were sufficiently onerous to state a claim under the Eighth Amendment. Outside of his allegations that he was denied food and personal hygiene items during his first 72 hours in

the jail, he makes no allegation that he was denied food or sanitation during the remainder of his detention. Although he may have been inconvenienced by the increased population, overcrowding is not, in itself, a constitutional violation, and he has not alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation. Accordingly, the court finds this claim without merit.

Next, Raudenbush alleges that his incoming mail was discarded or returned to sender and his outgoing mail was discarded and not delivered. The Supreme Court has recognized that receiving mail is a First Amendment right. *Jones v. Caruso,* 569 F.3d 258, 167 (6th Cir. 2009). However, Raudenbush has offered no facts to establish that the Monroe County Jail failed to deliver his mail. Accordingly, the court finds this claim without merit.

Raudenbush also alleges that the temperature in his cell was "intentionally lowered to 45-50 degrees all night and the next day." However, Monroe County established that there is no thermostat in any cell where Raudenbush was housed during his detention, and while there are multiple heating/cooling units in the jail, the cells cannot be made cooler than 65 degrees. Accordingly, the court finds this claim without merit.

Lastly, Raudenbush alleges that he was "denied the use of the telephone in the cell he was placed in" and was told by a jailer that he was ordered to not allow him to use the phones. The Sixth Circuit has held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends. *Washington v. Reno,* 35 F.3d 1093, 1100 (1994). Nevertheless, an inmate has no right to unlimited telephone use. Instead, a prisoner's right to telephone access is subject to "rational limitations in the face of legitimate security interests of the penal institution." *Id.*

Apart from his conclusory allegation that he was denied use of a telephone during his detention, Raudenbush fails to provide any evidence to support his allegation. Instead, the record show that he was allowed his one phone call when he was booked into the jail, which he used to call Daniel Morgan. Accordingly, the court finds this claim without merit.

## XI. State Law Claims

Raudenbush also alleges claims under Tennessee state law based on negligence, false arrest/imprisonment, malicious prosecution, common law conspiracy, intentional/negligent infliction of emotional distress, assault and battery. The court has supplemental jurisdiction over these claims through 28 U.S.C. § 1367. A court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The only claims that the court has original jurisdiction over are Raudenbush's § 1983 claims. Because the court has dismissed all § 1983 claims, it will decline to exercise supplemental jurisdiction over the state claims. Accordingly, Raudenbush's state law claims are dismissed without prejudice. See Fed. R. Civ. P. 41(b).

## XII. Motion to Strike Sur-Reply

Defendants move to strike Raudenbush's sur-reply filed in opposition to the motions for summary judgment [R. 130]. The motion to strike is **GRANTED.**

Local Rule 7.1(d) governs the filing of supplemental briefs. The rule states:

No additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the court, except that a party may file a supplemental brief of no more than 5 pages to call to the court's attention developments occurring after a party's final brief is filed.

First, Raudenbush did not seek court approval prior to filing his sur-reply.  Second, the sur-reply exceeds 5 pages, and merely reargues Raudenbush's previous arguments against summary judgment.  Third, the sur-reply contains no new developments in the case.  Accordingly, the court finds the sur-rely should be stricken from the record for failure to comply with Local Rule 7.1(d).

**Conclusion**

Finding no merit to Raudenbush's federal claims, defendants' motions for summary judgment [R. 106, 110] are **GRANTED,** and his claims brought pursuant to 42 U.S.C. § 1983 are **DISMISSED, with prejudice.**   Raudenbush's state law claims will be **DISMISSED, without prejudice.**

Order to follow.

**UNITED STATES DISTRICT JUDGE**